# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Jorge S.,                                Case No. 18-CV-1842 (SRN/HB)

            Petitioner,

v.                           **REPORT AND RECOMMENDATION**

Secretary of Homeland Security; Attorney
General Jefferson Sessions; Scott
Baniecke, ICE Field Office Director; and
Kurt Freitag, Freeborn County Sheriff,

            Respondents.

---

Andrew Crowder and Michael D. Reif, Robins Kaplan LLP, for Petitioner

Ana H. Voss and Ann M. Bildtsen, United States Attorney's Office, for Respondents
Secretary of Homeland Security, Attorney General Jefferson Sessions, and Scott
Baniecke.

---

HILDY BOWBEER, United States Magistrate Judge

Petitioner Jorge S. has filed a petition for a writ of habeas corpus challenging the

legality of his ongoing detention as removal proceedings against him go forward. The

Court recommends that Jorge S.'s habeas petition be dismissed in part, denied without

prejudice in part, and denied in part, as set forth fully below.

## I. BACKGROUND

On April 27, 2018 (or very early on April 28), Jorge S. was arrested in South

Dakota and shortly thereafter charged with aggravated assault, reckless discharge of a

firearm, and disorderly conduct. (*See* Ligon Decl. ¶ 5 [Doc. No. 5]; Pet. Ex. at 22 (arrest

1

report dated April 27) [Doc. No. 8-2]; Pet. Ex. at 55 (police report stating that Jorge S. was arrested forty minutes after midnight on April 28).)  U.S. Immigration and Customs Enforcement ("ICE") lodged a detainer on April 28 with the county jail where Jorge S. was being held.  (Ligon Decl. Ex. 1 at 3 [Doc. No. 5-1].)  The detainer requested that state officers maintain custody of Jorge S. for a period not to exceed forty-eight hours should Jorge S. otherwise be entitled to release from detention, so that ICE could take custody of Jorge S. for the purpose of initiating removal proceedings.  (*Id*.)

The state-court judge to whom Jorge S. was initially presented set a $5,000 bond in the South Dakota criminal proceedings.  (Pet. Ex. at 22.)  Jorge S. contends that his wife attempted to pay this bond on several occasions beginning on April 30, but that jail officials refused to take the money.  Had the bond payment been accepted, the ICE detainer lodged on April 28 would have commenced, and jail officials would have been authorized to detain Jorge S. for only another forty-eight hours following the bond payment, during which time ICE could take Jorge S. into its own custody.  *See* 8 C.F.R. § 287.7(d).  As events transpired, no bond payment on behalf of Jorge S. was ever accepted by jail officials, and Jorge S. remained in the county's custody until he was granted a personal recognizance bond in the criminal proceedings on May 8.  (Ligon Decl. Ex. 1 at 3; Pet. Ex. at 22.)  The 48-hour ICE detainer lodged on April 28 commenced at that time, giving ICE until May 10 to apprehend Jorge S. from the county jail.  ICE effected custody on May 9[1] and moved Jorge S. from Marshall County, South

---

[1] Deportation Officer John D. Ligon attests that Jorge S. was transferred to the custody of ICE on May 8, the same day on which he was granted a personal recognizance bond in

Dakota, to Sioux Falls, South Dakota.  (Ligon Decl. Ex. 1 at 3.)

On May 9, 2018, ICE issued a notice of custody determination to Jorge S.  (Pet. Ex. at 5.)  In that notice, Jorge S. was informed that he would be detained by the Department of Homeland Security ("DHS") rather than released on bond or under his own recognizance.  (*Id*.)  Jorge S. was also informed that he could request review of the custody determination by an immigration judge ("IJ"), a right that Jorge S. exercised. (*Id*.)  Not long thereafter, Jorge S. was again transferred, this time from Sioux Falls, South Dakota, to Albert Lea, Minnesota.

The hearing regarding Jorge S.'s custody determination was held before IJ Sarah B. Mazzie in Minnesota on June 19, 2018.  (Pet. Ex. at 42.)  In a brief order issued on June 19, IJ Mazzie denied a request for release, finding that Jorge S. was a "danger to [the] community."  *Id*.  IJ Mazzie expanded on that finding in a July 25, 2018 memorandum.  (Pet. Ex. at 44-47.)  The memorandum began by noting the circumstances by which Jorge S. came to be detained and by finding that Jorge S. bore "the burden of demonstrating to the satisfaction of the Immigration Judge (IJ) that his . . . release would not pose a danger to property or persons . . . ."  *Id*. at 45 (quotations and citations omitted).  IJ Mazzie concluded that Jorge S. had failed to meet his burden of proof due to

---

the South Dakota criminal proceedings.  (Ligon Decl. ¶ 7.)  Jorge S. contends in his briefing that this transfer took place the following day, on May 9, 2018.  (Doc. No. 8 at 9-10.)  The underlying documents are somewhat ambiguous on this point (*see* Ligon Decl. Ex. 1 at 3), and the government has cited both dates in its briefing (*compare* Doc. No. 4 at 3 ("On May 8, 2018, Jorge S. was granted bond in South Dakota and turned over to ICE in Sioux Falls, South Dakota"), *with* Doc. No. 14 at 3 ("ICE picked [sic] Mr. [Jorge S.] on May 9.").  The discrepancy is ultimately immaterial to the resolution of Jorge S.'s habeas petition.

the criminal charges pending against him in South Dakota: "[I]n light of the serious nature of the charges against Respondent, the Court finds Respondent has failed to establish to the satisfaction of the IJ that he is not a danger to property or persons." *Id.* at 47. Jorge S. appealed the bond decision to the Board of Immigration Appeals ("BIA") on July 12, 2018. (Ligon Decl. ¶ 11.) It is not clear from the record currently before the Court whether that appeal has yet terminated; in any event, Jorge S. is still being detained by the DHS.

On October 19, 2018, the State of South Dakota dismissed without prejudice the criminal charges against Jorge S. that precipitated the events described above. (Voss Decl. Ex. 9 [Doc. No. 16-1].) On October 25, 2018, IJ Mazzie issued an order finding Jorge S. removable. (Voss Decl. Ex. 10 [Doc. No. 16-2].) That order had not yet become final at the time briefing in this matter was completed.

## II. ANALYSIS

Jorge S. filed a petition for a writ of habeas corpus in this District on June 28, 2018. (Pet. at 9 (noting the date on which the petition was placed in the jail mail system) [Doc. No. 1].) The habeas petition itself raised only a single ground for relief: that Jorge S.'s "prolonged and continued detention [was] unreasonable" and therefore violated his constitutional rights. (Pet. at 6.) The documents attached to the petition, however, suggested at least three other possible claims for relief: (1) a claim that Jorge S.'s detention in Minnesota effectively deprived him of assistance of counsel in the South Dakota criminal proceedings; (2) a claim that the process by which ICE first had come to detain Jorge S.—with Jorge S.'s wife attempting to pay the necessary bond and

4

being rejected by county officials—violated his Fourth Amendment rights; and (3) a claim that the IJ wrongly shifted the burden of proof onto Jorge S. in determining whether he was a danger to the community and should therefore be detained during the removal proceedings. And in his reply brief, Jorge S. raised a fifth claim: Whether the immigration court lacks jurisdiction over him due to deficiencies in the notice to appear ("NTA") issued in anticipation of the removal proceedings. This Court will consider each of those claims in turn.

### A. Sixth Amendment Claim

After being detained by ICE, Jorge S. was transferred from Marshall County, South Dakota (near the northern border of that state) to Sioux Falls and then to Albert Lea, Minnesota, approximately 300 miles from where Jorge S.'s criminal proceedings were being held. (*See* Ligon Decl. Ex. 1 at 3; Pet. Ex. at 7.) Jorge S.'s public defender represented during the immigration proceedings that the transfer of Jorge S. to southern Minnesota, about five hours away by car, was impeding his ability to defend Jorge S. in the criminal matter. (*See* Pet Ex. at 7.) Although the claim was not affirmatively pleaded in the habeas petition itself, this Court ordered Respondents to address whether Jorge S.'s continuing detention by ICE amounted to a constructive denial of his right to effective assistance of counsel in the South Dakota criminal proceedings. (Order at 2, July 5, 2018 [Doc. No. 3].)

The parties agree that this claim has become moot in light of the dismissal of the criminal charges against Jorge S. Accordingly, Jorge S.'s Sixth Amendment claim must be dismissed on that basis.

5

### B. Fourth Amendment Claim

Jorge S. was detained in South Dakota county jails for approximately twelve days following his arrest on or about April 27, 2018. For the vast majority of that period, Jorge S. was held on $5,000 bond. Jorge S. alleges that his wife repeatedly attempted to pay the bond, including as early as April 30, but was rebuffed by jail officials. After Jorge S.'s bond status was altered in the criminal proceedings to personal recognizance on May 8, a previously transmitted 48-hour ICE detainer request kicked in, and Jorge S. was held until his custody was transferred to ICE on or about May 9.

The precise circumstances of Jorge S.'s detention between April 30 and May 8 remain unclear. For his part, Jorge S. speculates that ICE may have requested that jail officials continue detaining him, notwithstanding his attempts to make bail, because ICE was not yet prepared to take him into its own custody on April 30 (or forty-eight hours thereafter) and thus requested that he be kept in state custody until such time that ICE could claim him. Not until its hand was forced by the granting of release on personal recognizance in the criminal proceedings, claims Jorge S., did ICE rouse itself to take custody of him. ICE disclaims any knowledge that Jorge S. may have attempted to pay the required bond to county officials. (Fritz Decl. ¶ 7 [Doc. No. 15].) Jorge S. counters that, whatever the reason for the jail officials' refusal to accept the bond payment, the period during which he was detained following that refusal amounted to a seizure without probable cause and thus a violation of his constitutional rights.

Jorge S.'s claim is *far* from frivolous. "The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause."

6

*Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 918 (2017).  The parties agree that county officials had probable cause to detain Jorge S. between the period when he was arrested and when his wife first attempted to pay the required bond.[2]  The parties also appear to agree that jail officials could have held Jorge S. for forty-eight hours following the payment of bond pursuant to the detainer issued by ICE on April 28.  *See* 8 C.F.R. § 287.7(d) ("Upon a determination by the Department to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed 48 hours . . . in order to permit assumption of custody by the Department.").  Beyond that 48-hour period, however, any detention of Jorge S. by county officials would have been unlawful absent a basis for probable cause other than the reason for the original arrest.  *See, e.g.*, *Morales v. Chadbourne*, 793 F.3d 208, 217 (1st Cir. 2015) ("Because Morales was kept in custody for a new purpose after she was entitled to release, she was subjected to a new seizure for Fourth Amendment purposes— one that must be supported by a new probable cause justification.").  Moreover, the suspicion—or even the knowledge—that Jorge S. had violated immigration laws would not have been sufficient justification for county officials to continue holding Jorge S. beyond the 48-hour period permitted by § 287.7(d).  *See Arizona v. United States*, 567 U.S. 387, 413 (2012) ("Detaining individuals solely to verify their immigration status

---

[2] This Court assumes, for purposes of this Report and Recommendation, that Jorge S.'s factual allegations regarding his wife's attempted payment of bond are correct.

would raise constitutional concerns.").[3]  If jail officials held Jorge S. beyond the period for which they had probable cause to do so, Jorge S. may have a viable constitutional claim against those officials.  And if those jail officials acted at the explicit or implicit direction of ICE, Jorge S. may perhaps have a viable claim against the ICE officials who directed the unlawful detention.

The problem for Jorge S. here is that, whatever the merits of these claims, they are not *habeas corpus* claims.  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  Even if Jorge S. is correct that his detention at the county jail from roughly May 2 through May 9 amounted to a violation of his constitutional rights, this would not be enough by itself to show that Jorge S. should be freed from his detention *now*.  By May 9, 2018 (and likely earlier), ICE had both probable cause to detain Jorge S. for violations of the immigration statutes and legal authority upon which to effect such a detention.  *See* 8 U.S.C. § 1226(a); (Fritz Decl. ¶ 5; Fritz Decl. Ex. 8 [Doc. No. 15-2]).  This would have been the case regardless of whether county officials had accepted the bond payment and released Jorge S. after the 48-hour detainer period had elapsed.  Release from Jorge S.'s *current* detention because his detention *previously* had been unlawful would be a remedy

---

[3] This claim is being considered under the Fourth Amendment, which is how the claim was presented by Jorge S.  At least one court has recently considered claims similar to the one raised by Jorge S. under the rubric of substantive due process.  *Lynch v. City of New York*, – F. Supp. 3d – , 2018 WL 4660371, at *5-7 (S.D.N.Y. Sept. 28, 2018).  This Court's conclusion would be the same regardless of the constitutional provision being invoked.

ill-fitted to the specific injury alleged.

More appropriate for Jorge S. would be a claim for civil relief—i.e., monetary damages—brought against the specific persons responsible for the allegedly unlawful detention, whether under 42 U.S.C. § 1983 (as to county or state officials) or *Bivens*[4] (as to federal officials). *See Spencer v. Haynes*, 774 F.3d 467, 469-70 (8th Cir. 2014) (distinguishing claims sounding in habeas corpus from claims sounding civilly). For good reason, this is how claims similar to the Fourth Amendment claim presented by Jorge S. in this case have been adjudicated previously, including in this District. *See*, *e.g.*, *Parada v. Anoka County*, – F. Supp. 3d – , 2018 WL 3621210, at *7-8 (D. Minn. July 30, 2018); *Orellana v. Nobles County*, 230 F. Supp. 3d 934, 944-46 (D. Minn. 2017); *Miranda-Olivares v. Clackamas County*, No. 3:12-CV-2317, 2014 WL 1414305, at *9-11 (W.D. La. Apr. 11, 2014) (granting summary judgment for plaintiff raising claim under § 1983 similar to the habeas claim raised here by Jorge S.); *Lynch v. City of New York*, – F. Supp. 3d – , 2018 WL 4660371, at *5-7 (S.D.N.Y. Sept. 28, 2018). In fact, as Respondents point out, ordering Jorge S.'s release from custody would as a practical matter be an illusory benefit, as nothing would prevent ICE from lawfully re-taking custody of Jorge S. the moment after he had been "released" from detention. Monetary damages, by contrast, provide at least some degree of tangible compensation for the harm alleged while discouraging government officials from similar behavior in the future.

This Court therefore recommends that Jorge S.'s Fourth Amendment claim be

---

[4] *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

denied without prejudice. Similarly, this Court recommends denial of Jorge S.'s request for an evidentiary hearing to expand the record regarding his Fourth Amendment claim, because, even assuming that the facts alleged by Jorge S. would be shown to be true as a result of the hearing, he would not be entitled to habeas corpus relief from his detention on the grounds that his detention previously was unlawful. An evidentiary hearing in this matter would do nothing to further the development of Jorge S.'s habeas claim.[5] *See Kendrick v. Carlson*, 995 F.2d 1440, 1446 (8th Cir. 1993).

### C. Fifth Amendment Claims

#### 1. Burden of Proof

The IJ who presided over Jorge S.'s bond hearing made clear that she had placed the burden on him, rather than the government, to prove that he was not a danger to the community and therefore should be released from detention during his removal proceedings. (Pet. Ex. at 47 ("[T]he Court concludes Respondent has not met *his burden* to show he is not a danger to the community." (emphasis added)).) Section 1226(a), the statute under which Jorge S. is detained, does not assign the burden of proof to either party in establishing lack of dangerousness, but 8 C.F.R. § 236.1, which was promulgated pursuant to § 1226, provides that in an initial bond-determination hearing before an officer authorized to issue warrants, "*the alien* must demonstrate to the satisfaction of the officer that [his] release would not pose a danger to property or persons." 8 C.F.R.

---

[5] Nothing in this Report and Recommendation should be construed as limiting Jorge S.'s ability to seek civil relief against the appropriate defendants. The Federal Rules of Civil Procedure, of course, afford litigants broad rights to conduct discovery in prosecution of civil claims for relief.

§ 236.1(c)(8) (emphasis added).  Similarly, the BIA has long held that the "burden is on the alien to show to the satisfaction of the Immigration Judge that he or she merits release on bond" during the redetermination hearing.  *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *accord In re Adeniji*, 22 I. & N. Dec. 1102, 1112-13 (BIA 1999) (analogizing initial hearings before warranting officer and redetermination hearings before IJ and applying burden of proof set out in § 236.1(c)(8) to the latter).

Recently, though, the constitutionality of placing upon aliens the burden to prove when seeking bond under § 1226(a) that they are not a danger to the community (or likely to flee) has come under sustained questioning.  *See, e.g.*, Mary Holper, *The Beast of Burden in Immigration Bond Hearings*, 67 Case W. Res. L. Rev. 75 (2016).  One circuit court has concluded, notwithstanding § 236.1(c)(8) and *Adeniji*, that the federal constitution requires that "an alien is entitled to release on bond unless the '*government* establishes that he is a flight risk or will be a danger to the community.'"  *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 951 (9th Cir. 2008) (emphasis added) (quoting *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005)); *accord Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011).  Several district courts have held similarly. *See, e.g.*, *Haughton v. Crawford*, 221 F. Supp. 3d 712, 713-17 (E.D. Va. 2016); *Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 690-93 (D. Mass. 2018); *Linares Martinez v. Decker*, No. 18-CV-6527 (JMF), 2018 WL 5023946, at *3 (S.D.N.Y. Oct. 17, 2018); *Portillo v. Hott*, No. 18-CV-0470 (LMB/MSN), 2018 WL 3237898, at *8 & n.9 (E.D. Va. July 3, 2018) (reaffirming *Haughton* as "good authority"); *but see, e.g.*, *Borbot v. Taylor*, Civil No. 17-4646 (JLL), 2017 WL 3086225, at *3 (D.N.J. July 19,

2017) ("[I]n both a bond hearing, or bond redetermination, under § 1226(a) the alien must show that he is not a danger").  Jorge S. argues, consistent with those cases, that the IJ erred in requiring *him* to prove his lack of dangerousness.

This Court's authority to review the decision of the IJ is circumscribed by 8 U.S.C. § 1226(e), which provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole."  But while the ultimate decision whether to grant or deny bond is unreviewable, a habeas petitioner may challenge the legality of the "'statutory framework that permits the alien's detention without bail.'" *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (quoting *Demore v. Kim*, 538 U.S. 510, 516 (2003)).  Put another way, this Court cannot review whether the IJ was correct or reasonable in her final decision to order Jorge S. held without bond.  This Court *may* review, though, whether the IJ applied the correct legal standards in making that decision.  *See Pensamiento*, 315 F. Supp. 3d at 688-89.

"May review" is not the same as "must review," however.  "Habeas corpus is 'governed by equitable principles.'"  *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (quoting *Fay v. Noia*, 372 U.S. 391, 438 (1963)).  "Prudential concerns" therefore sometimes "require a federal court to forgo the exercise of its habeas corpus power."  *Id.* (quotations omitted).  For that reason (and others), courts have generally required exhaustion of remedies alternative to habeas corpus before petitioners may seek the writ, even where exhaustion requirements are not affirmatively mandated by statute.  *See, e.g.*, *United States v. Callahan*, 800 F.3d 422, 426 (8th Cir. 2015); *Davies v. Tritten*, No. 17-CV-3710

(SRN/SER), 2017 WL 4277145, at *4 (D. Minn. Sept. 25, 2017).

The difficult constitutional question presented by Jorge S. has in large part been superseded by events. The sole basis for his continuing detention cited by the IJ was the pendency of the South Dakota criminal proceedings and the severity of the charges against him. (Pet. Ex. at 44-47.) The IJ expressly concluded that Jorge S. was not a flight risk in light of his extensive ties to the United States; among other things, Jorge S. owns a home here, and his wife and young children, all citizens of the United States, reside here. (*Id*. at 46.) Jorge S.'s criminal record apart from the April 2018 arrest is insignificant, consisting only of a "couple of minor traffic offenses" that the IJ minimized as not being "significant indicators of Respondent's dangerousness." (*Id*. at 46 n.1.) It was the April 2018 criminal charges that animated the entirety of the IJ's bond decision.[6] And those criminal charges have now been dismissed.

Regardless of the placement of the burden of proof at the original redetermination hearing, then, Jorge S.'s continuing detention under § 1226(a) would appear to be built on a flimsy premise. Fortunately, regulations provide that an alien may request a subsequent bond redetermination where "the alien's circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e).

A redetermination hearing under § 1003.19(e) is a more appropriate means for

---

[6] The question must have been close for the IJ, even after having placed the burden of proof where she did, given that Jorge S. was made eligible for bond immediately upon presentment in the criminal proceedings and then released on his own recognizance less than two weeks later. Under South Dakota law, Jorge S. would not have been eligible for release on bond unless the state-court judge concluded that he did not "pose a danger to any other person or to the community." S.D. Codified Laws § 23A-43-2.

Jorge S. to procure relief than habeas corpus for two reasons.  First, even if the Court were to conclude that the burden of proof was inappropriately shifted to Jorge S. in the bond proceedings, it is not clear that Jorge S. was prejudiced by the possible error.  *See Maldonado-Velasquez v. Moniz*, 274 F. Supp. 3d 11, 13 (D. Mass. 2017) ("[T]he court need not reach the merits of the constitutional argument in deciding the motion to dismiss.  Even assuming that Maldonado-Velasquez is correct about the allocation of the burden of proof, he was not prejudiced by the misallocation of that burden at his bond hearing.").  Again, Jorge S.'s continuing detention by ICE was premised on the pendency of the South Dakota criminal proceedings.  Even if the burden of proof had been placed on the government, the evidence put before the IJ would likely have been the same.[7]  As a practical matter, assignment of burdens of proof probably made little difference to the immigration judge in the end.  Thus, even if the Court were to agree with Jorge S. regarding where the burden of proof should have been assigned, the failure to show prejudice might nevertheless thwart his attempt to procure habeas relief.

Second, even if Jorge S. were to overcome the hurdle of prejudice and be granted habeas corpus relief, § 1226(e) precludes the Court from finding his continuing detention unlawful because of the error.  The most that the Court could do is order that a new bond

---

[7] Jorge S. argues that the potentially misplaced burden of proof amounted to a violation of his right to avoid self-incrimination, as his refusal to testify at the bond hearing in order to avoid potentially implicating himself in the criminal matter could be used against him for purposes of establishing his potential dangerousness.  But it is hard to see why things would have played out any differently had the burden of proof been placed on the government.  The IJ would have seen the same evidence regarding the South Dakota criminal proceedings, and it would have then been up to Jorge S. to either attempt to rebut that evidence through his testimony or make the strategic decision to remain silent.

hearing be held. But this, in effect, is the remedy § 1003.19(e) already provides to Jorge S. in light of his materially changed circumstances.

As a result, prudential concerns dictate that the thorny constitutional question raised by Jorge S. be left unaddressed in this case. Even if Jorge S. is correct that he should not have been assigned the burden of proof to establish his lack of dangerousness, he likely did not suffer prejudice due to the error; an alternative procedural vehicle has become available for him to seek relief; and that alternative procedural vehicle is more likely to produce the relief he seeks—that is, release from detention—than the granting of a writ of habeas corpus, which can only produce another bond redetermination hearing. For these reasons, it is recommended that this claim be denied without prejudice.[8]

## 2. Jurisdictional Deficiencies

Jorge S. invokes the Supreme Court's recent decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), to argue that the NTA issued in his case was defective, and that as a result, the immigration court in which his removal proceedings took place lacked jurisdiction over him and he should be freed from his current detention on that basis. His argument is unavailing.

The Supreme Court explained in *Pereira* that:

Nonpermanent residents . . . who are subject to removal proceedings and

---

[8] This Court assumes, for purposes of this Report and Recommendation, that Jorge S.'s detention status has not changed since the time briefing in this matter was completed— *i.e.*, that Jorge S. remains detained pursuant to § 1226(a) pending removal proceedings that have not yet become final. Should Jorge S. become subject to detention under a *different* provision—for example, should Jorge S.'s order of detention become final, *see* 8 U.S.C. § 1231(a)(2)—this claim (and much of the rest of the petition) would become moot.

have accrued 10 years of continuous physical presence in the United States, may be eligible for a form of discretionary relief known as cancellation of removal. 8 U.S.C. § 1229b(b)(1). Under the so-called "stop-time rule" set forth in § 1229b(d)(1)(A), however, that period of continuous physical presence is "deemed to end . . . when the alien is served a notice to appear under section 1229(a).

*Id.* at 2109. In *Pereira*, the Supreme Court held that "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a),' and so does not trigger the stop-time rule." *Id.* at 2113-14.

Jorge S.'s NTA, like the vast majority of NTAs issued by the government over the past three years, stated that the time and date of his removal hearing was "to be set" (or, more commonly, "to be determined"). (Pet. Ex. at 2); *see also Pereira*, 138 S. Ct. at 2111. Per *Pereira*, Jorge S.'s NTA would have been insufficient to trigger the stop-time rule discussed above. But the stop-time rule is irrelevant to Jorge S., who instead invokes *Pereira* for a different, far broader conclusion: that his deficient NTA renders his removal proceedings void *ab initio* and his continued detention unlawful.

Jorge S. stretches the reasoning of *Pereira* beyond the breaking point. "Nothing in *Pereira* suggests that the failure to specify the date and time of removal proceedings in 8 U.S.C. § 1229(a) voids the commencement of removal proceedings." *Ramat v. Nielsen*, 317 F. Supp. 3d 1111, 1117 (S.D. Cal. July 6, 2018). *Pereira* was limited to the narrow question of how the stop-time rule should apply where a deficient NTA is issued to an alien; that case did not declare that the overwhelming majority of removal proceedings conducted in the United States in recent years have been invalid. *See Pereira*, 138 S. Ct.

16

at 2111 (noting the government's admission in that case that "almost 100 percent of notices to appear [had omitted] the time and date of the proceeding over the last three years" (quotations omitted)).

That said, at least three other courts have cited *Pereira* in finding that an insufficient NTA can invalidate completed removal proceedings.  *See United States v. Virgen-Ponce*, 320 F. Supp. 3d 1164 (E.D. Wash. 2018); *United States v. Pedroza-Rocha*, No. EP-18-CR-1286-DB, Doc. No. 53 (W.D. Tex. Sep. 21, 2018) (unpublished); *United States v. Zapata-Cortinas*, No. SA-18-CR-0343-OLG, 2018 WL 4770868 (W.D. Tex. Oct. 2, 2018).  The reasoning of those cases—which, for simplicity's sake, this Court will refer to singularly as *Virgen-Ponce*—goes as follows:  Under 8 C.F.R. § 1003.14(a), "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service."  8 C.F.R. § 1003.14(a).  "The charging document must include a certificate showing service on the opposing party pursuant to § 1003.32 which indicates the Immigration Court in which the charging document is filed."  8 C.F.R. § 1003.14(a).  "[T]he charging document required to vest jurisdiction must include a Notice to Appear."  *Virgen-Ponce*, 320 F. Supp. 3d at 1166.  A putative NTA that does not bear the time and place of the removal proceedings is not an NTA at all for purposes of § 1229(a).  *See Pereira*, 138 S. Ct. at 2113-14.  Thus, *Virgen-Ponce* concludes, without a proper NTA stating the time and place of the removal proceedings, the immigration courts could not have had jurisdiction over the removal proceedings, which are void as a result.  *Cf. Puc-Ruiz v. Holder*, 629 F.3d 771, 782 (8th Cir. 2010) ("When the IJ lacks jurisdiction, his decisions are

17

nullities.").

The *Virgen-Ponce* reasoning has been widely criticized elsewhere. *See United States v. Larios-Ajualat*, No. 18-10076-JWB, 2018 WL 5013522, at *3 (D. Kan. Oct. 15, 2018); *United States v. Lira-Ramirez*, No. 18-10102-JWB, 2018 WL 5013523, at *6-7 (D. Kan. Oct. 15, 2018); *United States v. Morales-Hernandez*, No. CR-18-0365-TUC-RRC, 2018 WL 4492377, at *1 (D. Ariz. Sept. 18, 2018); *United States v. Ramos-Delcid*, No. 3:18-CR-0020, 2018 WL 5833081, at *4 n.7 (W.D. Va. Nov. 7, 2018). Respectfully, this Court finds convincing the rebuttals to *Virgen-Ponce* set forth in these cases.

More importantly for this case, though, is that even if *Virgen-Ponce* is correctly decided, Jorge S. still would not be entitled to habeas corpus relief. All of the cases discussed above concern criminal prosecutions for unlawful reentry of the United States following removal in violation of 8 U.S.C. § 1326. *Virgen-Ponce* concluded that because the removal itself was not validly effectuated, the defendant in that matter could not be prosecuted for unlawful reentry after the invalid removal. The concern in this case is different: whether *ongoing* removal proceedings are valid in light of a deficient NTA. Unlike in *Virgen-Ponce*, nothing is now stopping Jorge S. from raising his claim based on *Pereira* in the ongoing removal proceedings before the immigration court, before the BIA, or, if necessary, before the Eighth Circuit Court of Appeals.[9] Even if Jorge S. is correct that the immigration court lacks jurisdiction, those courts are well within their capacity to determine the jurisdictional argument in the first instance, no differently than

---

[9] Indeed, this Court likely lacks jurisdiction to find that the ongoing removal proceedings are invalid, whether for jurisdictional reasons or otherwise. *See* 8 U.S.C. § 1252(a)(5).

this Court may determine the scope of its own subject-matter jurisdiction.

Moreover, even if Jorge S.'s argument were correct, it still would not stand to reason that his detention is invalid.  Again, recall that *Virgen-Ponce* and the cases rebutting *Virgen-Ponce* arose in the context of criminal proceedings for unlawful reentry after removal.  Probable cause for detaining the alien on those criminal charges vanished once the removal proceedings were invalidated; the alien defendants could not have unlawfully reentered the United States after removal if those defendants were never removed within the meaning of the law.  Here, though, Jorge S. may *still* be detained pursuant to § 1226(a) even if the removal proceedings were to be invalidated on jurisdictional grounds, as the same probable cause that now justifies his detention for being removable would continue to exist.  Thus, the reasoning of *Virgen-Ponce* cannot provide a means of relief from detention to Jorge S. or similarly situated habeas petitioners.  This claim should be denied.

### 3.  Length of Detention

Finally, this Court reaches the sole claim raised expressly in Jorge S.'s habeas petition itself: whether the *length* of his detention in the custody of ICE has been unreasonable and thus violated his constitutional rights.  The parties afforded little discussion to the claim in their briefing; indeed, Jorge S. does not even mention it in his reply brief.  In any event, this Court agrees with Respondents that the length of Jorge S.'s detention, whether measured as of the time that the habeas petition was filed or as of today, does not amount to a constitutional violation.

The vast majority of cases discussing length of detention for aliens held pending

19

removal proceedings do so in the context of 8 U.S.C. § 1226(c), which requires that aliens convicted of certain criminal offenses be detained while removal proceedings are ongoing.  In *Demore*, the Supreme Court concluded that detention under § 1226(c) is constitutional insofar as it is effected "for the brief period necessary for [the alien's] removal proceedings."  538 U.S. at 513.  Constitutional concerns may arise, however, where the detention during removal proceedings ceases to be "brief" in duration.  *See, e.g.*, *Muse v. Sessions*, No. 18-CV-0054 (PJS/LIB), 2018 WL 4466052, at *2-6 (D. Minn. Sept. 18, 2018).  Under certain circumstances, a petitioner held for too great a duration pursuant to § 1226(a) may be constitutionally entitled to a bond hearing similar to that provided for aliens detained under § 1226(a).  *Id*. at *6; *Mohamed v. Sec'y, Dep't of Homeland Sec.*, No. 17-CV-5055 (DWF/DTS), 2018 WL 2392205, at *5 (D. Minn. Mar. 26, 2018), *R. & R. adopted*, 2018 WL 2390132 (D. Minn. May 25, 2018); *Tindi v. Sec'y, Dep't of Homeland Sec.*, No. 17-CV-3663 (DSD/DTS), 2018 WL 704314, at *3 (D. Minn. Feb. 5, 2018).

Jorge S. is being held pursuant to § 1226(a), not § 1226(c).  Section 1226(a), unlike § 1226(c), entitles an alien held during removal proceedings to a bond determination; in fact, this entitlement to a bond hearing is precisely what distinguishes § 1226(a) from § 1226(c).  And, consistent with § 1226(a), Jorge S. has twice received a bond determination: the first time immediately upon detention by ICE on May 9, 2018 (*see* Pet. Ex. at 5), and the second time by the immigration judge on June 19, 2018 (*see id*. at 42).  Less than two weeks had passed between the time of the second bond determination and the filing of Jorge S.'s habeas petition, and only about four months

have passed since that bond hearing and the date of this Report and Recommendation.  In the meantime, Jorge S.'s removal proceedings have continued apace, with an order of removal entered by the immigration judge on October 25, 2018.  (*See* Voss Decl. Ex. 10.)  Even assuming that § 1226(a) entitles a petitioner to *successive* bond hearings should too much time pass following an earlier denial of bond, *cf. Borbot v. Warden Hudson County Correctional Facility*, 906 F.3d 274, 278-80 (3d Cir. 2018), this Court cannot say that the length of Jorge S.'s detention up to this point, taken alone, jeopardizes his constitutional rights in the absence of a new bond hearing.[10]  This claim should also be denied without prejudice to Jorge S.'s right to pursue a similar claim should circumstances later dictate.

## III.    RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the petition for a writ of habeas corpus of petitioner Jorge S. [Doc. No. 1] be adjudicated as follows:

1.  **DISMISSED** as to the Sixth Amendment claim;

2.  **DENIED WITHOUT PREJUDICE** as to the Fourth Amendment claim;

3.  **DENIED** as to the burden-of-proof-based Fifth Amendment claim;

4.  **DENIED** as to the jurisdiction-based Fifth Amendment claim;

5.  **DENIED WITHOUT PREJUDICE** as to the length-of-detention-based Fifth

---

[10] That said, this Court has already suggested above that Jorge S. should be afforded a new bond determination hearing pursuant to § 1003.19(e) due to changed circumstances — namely, the dismissal of the criminal charges previously pending against him in South Dakota that were the sole basis for the finding that he should be detained during the pendency of the removal proceedings.

Amendment claim; and

6. **DENIED** as to an evidentiary hearing.

Dated: November 15, 2018                    *s/ Hildy Bowbeer*
                                            Hildy Bowbeer
                                            United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).